IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : Misc. No. 14-00205-GLT |
| | : |
| MATTERS INVOLVING THE | : |
| PROFESSIONAL CONDUCT OF | : |
| JASON J. MAZZEI, ESQ. | : |
| D/B/A MAZZEI & ASSOCIATES | : Related to Doc. No. 46 |
| IN MATTERS BEFORE THIS COURT. | : |
| | : |

## MEMORANDUM OPINION

Counsel:   Jason J. Mazzei, Esq. on behalf of himself and Mazzei & Associates, LLC
Joel M. Dresbold, Esq., Attorney for Jason J. Mazzei, Esq.

This matter is before the Court upon the *Motion to Reconsider Order Dated June 10, 2014 Assigning the Matter Referenced in Misc. No. 14-00205-GLT to the Honorable Gregory Taddonio* [Doc. No. 46] (the "Motion to Reconsider") filed by Jason J. Mazzei, Esq. ("Mazzei"). The *Motion to Reconsider* asks the Court to reconsider a *Memorandum Order* issued by Chief Judge Jeffery A. Deller on June 10, 2014 (the "June 10 Order") which assigned the above-captioned miscellaneous proceeding to the undersigned.[1] The Court conducted a hearing on the *Motion to Reconsider* on June 27, 2014. For the following reasons, the *Motion to Reconsider* is denied.

I.

Through the administration of their cases, the members of this Court became aware of certain allegations of misconduct against Mazzei. The Court took these allegations seriously because of the nature of the alleged misconduct and the number of instances in which they were alleged to have occurred. In one set of cases, the conduct resulted in the appointment of an expert who, at Mazzei's expense, would investigate his operations and recommend

---

[1] By Order issued on June 23, 2014, Chief Judge Deller assigned the *Motion to Reconsider* to the undersigned for disposition. See Doc. No. 51.

1

corrective actions.[2] The Court also received letters from several of Mazzei's clients which raised serious questions regarding the handling of their cases. The Court always gives earnest consideration to such correspondence, but its attention is heightened when the letters become increasingly frequent and the allegations are similar in substance.

After determining that it was no longer advisable to have the individual judges address these issues on a piecemeal basis, Chief Judge Deller commenced this disciplinary proceeding on April 2, 2014 for the purpose of conducting a comprehensive review of Mazzei's practices before this Court. [Doc. No. 1]. Chief Judge Deller directed the Honorable Thomas P. Agresti to examine Mazzei's conduct and issue a report and recommendation regarding his findings.

Judge Agresti's initial act was to issue an *Order to Show Cause* containing a "List of Particulars" which detailed the specific aspects of Mazzei's practice under review. [Doc. No. 3]. The "List of Particulars" involved matters of grave concern that had come to the Court's attention either through the expert's findings, letters from Mazzei's clients, or from other Orders issued by the Court. They include, among other things, charges that Mazzei overbilled clients on numerous occasions, filed false or altered statements with the Court, improperly shared legal fees, and indiscriminately pursued hundreds of loss mitigation cases without regard to whether such relief would benefit his clients. Mazzei was required to respond to each of these items. To the extent a factual dispute existed, Mazzei was given an opportunity to request an evidentiary hearing.

Mazzei responded to the *Order to Show Cause* by refuting most of the items contained in the "List of Particulars." [Doc. Nos. 11, 35]. He also requested an evidentiary hearing. [Doc No. 12]. Before the evidentiary hearing could be scheduled, Mazzei filed a

---

[2] See In re Charles W. Dietrich, Case No. 11-23556-JAD, Doc. No. 131.

2

motion seeking the recusal of Judge Agresti. Mazzei alleged that Judge Agresti's pursuit of these disciplinary proceedings demonstrated a personal bias against Mazzei (the "Motion to Recuse"). [Doc. No. 28]. He also claimed that Judge Agresti had personal knowledge of disputed evidentiary facts.

For similar reasons, Mazzei filed a motion requesting that Judge Deller vacate his April 2, 2014 Order and direct that Judge Agresti recuse himself from all cases in which Mazzei is counsel of record (the "Motion to Vacate"). [Doc. No. 33]. Importantly, the *Motion to Vacate* focused exclusively on Judge Agresti. It made no mention of any defect that would cause any other judge in this District to disqualify himself or herself.

Upon reviewing the *Motion to Recuse*, Judge Agresti denied that Mazzei presented a legitimate case for recusal. In light of the many transgressions he found, including "numerous, serious breaches of professional conduct[,]" Judge Agresti concluded that recusal was not mandatory since his impressions of Mazzei were not gleaned from an extrajudicial source. [Doc. No. 38]. He determined that his past rulings derived exclusively from conduct he personally observed in his courtroom and on his dockets, and not from any source outside of the record. Nevertheless, in an effort to dispel any questions of bias or prejudice against Mazzei, Judge Agresti decided to recuse himself from this disciplinary proceeding as a matter of discretion. [Doc. Nos. 37, 38].[3]

In light of Judge Agresti's decision, Chief Judge Deller reassigned the miscellaneous proceeding to the undersigned. [Doc No. 39]. In so doing, Chief Judge Deller denied the *Motion to Vacate* because its allegations were rendered moot since Judge Agresti was

---

[3] Mazzei subsequently appealed Judge Agresti's June 10, 2014 Order [Doc. No. 38] because Judge Agresti did not recuse himself from each individual bankruptcy case in which Mazzei appears as counsel of record. The appeal was ultimately dismissed on August 6, 2014 by the Honorable Nora Barry Fischer for failure to prosecute. [Doc. No. 71].

3

no longer presiding over the case. Chief Judge Deller also refused to dismiss the miscellaneous proceeding. He determined that the nature of the complaints leveled against Mazzei raise the issue of whether he should be subject to disciplinary action if the substance of the complaints is found to be true. As Chief Judge Deller's June 10 Order acknowledges, the merits of the various complaints will be decided after a report and recommendation is issued by the undersigned.

Mazzei now seeks reconsideration of Chief Judge Deller's June 10 Order. Essentially, the *Motion to Reconsider* is a second recusal motion, as Mazzei now seeks the recusal of the remaining members of this Court, thereby preventing any bankruptcy judge in this District from presiding over these disciplinary proceedings.[4] In support of his *Motion to Reconsider*, Mazzei submits a letter issued by Judge Agresti on November 14, 2013 to the chapter 13 trustee in which the other members of this Court were copied.[5] The letter transmitted a list of 256 cases in which Judge Agresti "denied fees to Mazzei & Associates since becoming aware of Atty. Mazzei's abuse of the Loss Mitigation Program." [Doc. No. 46, at Exhibit A]. Notwithstanding the denial of legal fees, Mazzei claims the use of the word "abuse" in the letter was unjustified because he was never held to have abused the loss mitigation system. Mazzei maintains that this characterization now taints the other judges of this Court to the point that their impartiality may be reasonably questioned.

This Court conducted a hearing on the *Motion to Reconsider* on June 27, 2014. At the hearing, Mazzei and his attorney, Joel M. Dresbold, Esq., were given an opportunity to

---

[4] It appears that Mazzei no longer seeks dismissal of the miscellaneous proceeding as this request was omitted from the *Motion to Reconsider*.

[5] In addition to the chapter 13 trustee, the letter was also sent to Chief Judge Jeffery A. Deller, Judge Carlota M. Böhm, the undersigned, Joseph Sisca, Esq. of the Office of the U.S. Trustee, Mazzei, Paul W. McElrath, Esq. (his colleague), John Horner, Esq. (the Clerk of Court at the time the letter was written), Michael R. Rhodes, Esq. (the Chief Deputy Clerk of Court at the time the letter was written), and the expert appointed (with Mazzei's consent) to investigate the operations of Mazzei & Associates.

identify all of the grounds upon which they believed recusal of the entire Court was warranted. Aside from the letter, the only other instance Mazzei relies upon to support his request is a colloquy that occurred during his first hearing before the undersigned.[6] Although he could not identify either the specific date or case in which this discussion transpired, Mazzei claims it shows a predisposition against him because the undersigned made comments about his handling of loss mitigation cases when the Court had no prior experience to rely upon. Apart from this one occasion, Mazzei did not specifically identify any other instances wherein he challenges the impartiality of the members of this Court.

## II.

The Federal Rules of Civil Procedure do not expressly recognize a motion to reconsider. See United States v. McGlory, 202 F.3d 664, 668 (3d Cir. 2000); In re Grigg, 2013 WL 5310207, *1 (Bankr. W.D. Pa. Sept. 20, 2013). However, bankruptcy courts generally consider such motions under Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60(b).[7] As the Third Circuit has explained:

> Although motions for reconsideration under Federal Rules of Civil Procedure 59(e) and 60(b) serve similar functions, each has a particular purpose. Rule 60(b) provides six bases for reconsideration, including "mistake, inadvertence, surprise, or excusable neglect" . . . . In contrast, Rule 59(e) permits the filing of a motion to alter or amend a judgment. A motion under Rule 59(e) is a "device to relitigate the original issue" decided by the . . . court, and used to allege legal error.

United States v. Fiorelli, 337 F.3d 282, 288 (3d Cir. 2003) (citations omitted).

---

[6] The substance of the colloquy is addressed in more detail below.

[7] Rule 59(e) of the Federal Rules of Civil Procedure is made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9023. Rule 60(b) of the Federal Rules of Civil Procedure is made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9024. Bankruptcy Rule 3008 recognizes a motion for reconsideration, but only in the context of an order allowing or disallowing a claim. See Fed. R. Bankr. P. 3008.

Under Rule 59(e), a judgment may be altered or amended if the movant satisfies at least one of the following: (1) an intervening change in controlling law; (2) the availability of new evidence not previously discoverable; or (3) the need to correct a clear error of law or fact to prevent manifest injustice. Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999); North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

Similarly, Rule 60(b) of the Federal Rules of Civil Procedure provides a basis for relief from a judgment for six possible reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Civil Rule 59(b); (3) fraud, misrepresentation, or misconduct of the opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; and (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b). Courts have routinely found that reconsideration is an extraordinary remedy to be granted sparingly. D'Angio v. Borough of Nescopeck, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999); Porter v. Blake, 2007 WL 966744, *1 (W.D. Pa. Mar. 27, 2007).

The *Motion to Reconsider* fails to state whether relief is sought under Rule 59(e) or Rule 60(b). As Chief Judge Deller stated in the Grigg opinion, the failure to specifically identify the basis of the *Motion to Reconsider* is, in itself, a sufficient reason to deny the motion. However, the Court will attempt to apply both Rule 59(e) and Rule 60(b) to the matter at hand.

The *Motion to Reconsider* does not break new ground. Mazzei does not cite any factor to support reconsideration under Rule 60(b). He also alleges no intervening change in controlling law, nor has he presented new evidence that was not previously discoverable. The letter, upon which Mazzei's arguments primarily rest, was available to him when he filed the

*Motion to Vacate*, yet he made no attempt to challenge the qualifications of any of the other judges at that time. Based on the absence of any other colorable grounds for relief, the Court must assume that Mazzei seeks reconsideration under Rule 59(e) and relies upon the argument that reconsideration is necessary to correct a clear error of law or fact to prevent manifest injustice.

The Court finds that Mazzei has not satisfied his burden of demonstrating clear error on the part of the Court. The *Motion to Reconsider* seeks review of the June 10 Order which did nothing more than deny the *Motion to Vacate* and assign the case to the undersigned. Mazzei dedicates only one paragraph of discussion to the June 10 Order. In that paragraph, Mazzei fails to identify any error of law or fact that would render the June 10 Order defective. His only direct criticism of the June 10 Order is its reference to five (5) clients who lodged complaints regarding his handling of their cases.[8] [Doc. No. 46 at ¶ 18]. He claims the June 10 Order paints him "in the worst possible light" because it does not reference his response to these allegations, which either denied the accusations or suggested they had been resolved.[9] Id.

Mazzei's concerns miss the mark. The June 10 Order did not make any findings with respect to the validity of the accusations lodged against Mazzei. To the contrary, the Order

---

[8] As cited in the June 10 Order, letters were filed by Mazzei's clients in the following cases: (1) In re Griffin, Case No. 11-27332-JAD at Doc. Nos. 127, 144, 149, 153, and 165; (2) In re Kaluzny, Case No. 11-22850-CMB at Doc. No. 113; (3) In re Vastadore, Case No. 09-29225-JAD at Doc. No. 102, 117, 118, 127, 133, 158, 185, 186, 188, 198, 200, 205, 215; (4) In re Yoxall, Case No. 08-26292-GLT at Doc. No. 209; and (5) In re Zmuda, Case No. 12-21489-GLT at Doc. No. 61.

[9] Mazzei also claims that the *Memorandum Opinion* [Doc. No. 37] issued by Judge Agresti on June 9, 2014 contains additional allegations and/or factual inaccuracies for which he has not had the opportunity to respond or defend. See *Motion to Reconsider*, Doc. No. 46 at ¶ 10. Despite making this assertion, Mazzei has not identified with specificity any of the issues or inaccuracies he complains of in the *Memorandum Opinion*. Similarly, when given an opportunity to elaborate on these issues at the June 27 hearing, he failed to do so. Absent sufficient proof to the contrary, the Court has no basis to question the accuracy of the *Memorandum Opinion*. The Court also notes that Mazzei abandoned his appeal of the *Memorandum Opinion* and its related Order. See supra note 3.

7

recognizes these as mere allegations of misconduct. [Doc. No. 39].[10] The point of the Order is not that the allegations are true, but that the allegations exist. Chief Judge Deller determined that it would be imprudent to dismiss the disciplinary proceedings in light of the many complaints received by the Court. He therefore directed the undersigned to continue the review of Mazzei's professional conduct to determine the validity of the accusations leveled against him and whether sanctions are justified. As part of the process, Mazzei will certainly have an opportunity to respond to these allegations and he can present evidence in support of his defense. All of this will occur during the evidentiary hearing in these proceedings. It is only after the conclusion of the evidentiary phase that the Court will make a report and recommendation concerning the merits of the accusations. Until then, the Court is obligated to review allegations of attorney misconduct which are brought to its attention.

The other fatal flaw in Mazzei's request is his attempt to belatedly raise issues that should have been presented in conjunction with his *Motion to Recuse* and *Motion to Vacate*. A motion for reconsideration should neither be used to reargue or relitigate matters previously disposed of, nor to raise new arguments or evidence that could have been raised originally. Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002); McDowell Oil Service, Inc. v. Interstate Fire and Cas. Co., 817 F. Supp. 538, 541 (M.D. Pa. 1993); In re Linerboard Antitrust Litig., 2008 WL 4461914, *3 (E.D. Pa. Oct. 3, 2008). Instead, the Third

---

[10]    The June 10 Order sets forth a number of allegations of misconduct, including the following:

> allegedly charging fees that have not been agreed to by his clients, allegedly failing to provide detailed invoices to clients, allegedly failing to properly disclose fees and expenses to his clients and the Court, allegedly receiving compensation without appropriate disclosure or application to the Court (or otherwise [complies] with applicable statute, rules and local rules), allegedly filing litigation or other procedures in the Court without consent of the litigants, allegedly commencing loss mitigation program ('LMP') matters with no justifiable basis, allegedly failing to communicate with clients, and allegedly failing to represent clients with appropriate diligence and competence . . .

[Doc. No. 39, at p. 3]. As the repeated use of the word "allegedly" suggests, the Court has not yet issued a conclusive finding with respect to the merits of these charges.

Circuit explains that "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).

At the time both motions were filed, Mazzei was in possession of the same facts and documents he now presents in the *Motion to Reconsider*. Armed with this information, Mazzei was not compelled to seek disqualification of the entire Court, nor did he suggest that a fair or impartial hearing was impractical in front of another bankruptcy judge in this District. Instead, Mazzei focused his energies entirely on Judge Agresti's recusal. It was only after the case was re-assigned that Mazzei complained that the remaining judges were also allegedly biased. Had this been a valid concern, it should have been addressed in the *Motion to Vacate* or the *Motion to Recuse*. The purpose of a motion to reconsider is to correct an error in the record. It does not provide litigants with a second bite at the apple to raise arguments they either ignored or neglected to make. Because he did not preserve the disqualification issue, Mazzei is precluded from raising it now.

This ends the inquiry. The Court determines that Mazzei failed to establish sufficient grounds to revisit the June 10 Order and therefore the *Motion to Reconsider* shall be denied. Notwithstanding this determination, the Court is compelled to address the specific arguments raised in the *Motion to Reconsider* since they were meant to suggest that Mazzei could not obtain a fair and impartial hearing before any member of this Court. Because it is important for the public to have confidence in the independence and impartiality of its judiciary, the Court will nevertheless engage in a recusal analysis in light of Mazzei's most recent allegations.

III.

The *Motion to Reconsider* seeks to recuse the remaining members of the Court from presiding over this disciplinary proceeding. Mazzei claims the bankruptcy judges in this District are unable to render an impartial decision because they were copied on a November 14 letter from Judge Agresti to the chapter 13 trustee which suggests that Mazzei "abused" the Court's loss mitigation program. Mazzei believes this letter constitutes an improper "public comment" that created a jaded impression of him in the eyes of the other judges. Because he can no longer "unring the bell," Mazzei suggests he can only obtain a fair hearing if the judge presiding over his disciplinary proceeding is unfamiliar with these prior events.

A.

Pursuant to 28 U.S.C. § 455(a), a United States judge shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned. Section 455(a) does not require the judge to have an actual bias or prejudice, but rather, the appearance of bias or prejudice will suffice. Liteky v. United States, 510 U.S. 540, 548 (1994). The statute employs an objective standard, requiring inquiry to be "made from the perspective of a *reasonable observer who is informed of all the surrounding facts and circumstances*." Microsoft Corp. v. United States, 530 U.S. 1301, 1302 (2000) (emphasis added); In re A.H. Robins Co., 602 F. Supp. 243, 245 (D. Kan. 1985) ("The test is whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge or in the mind of the litigant filing the motion for recusal, but rather in the mind of a reasonable person.").

Disqualification is also required when the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the

proceeding." 28 U.S.C. § 455(b)(1). The determination of a judge's "bias, prejudice, or lack of impartiality must be made on the basis of conduct which is extrajudicial in nature." A.H. Robins, 602 F. Supp. at 245. In other words, for the "alleged bias and prejudice to be disqualifying [it] must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." United States v. Grinnell Corp., 384 U.S. 563, 583 (1966).

Recusal of a judge is not granted lightly. It is assumed that a judge is impartial, and a substantial burden rests with the moving party to demonstrate otherwise. United States v. Denton, 434 F.3d 1104, 1111 (8th Cir. 2006). A motion to recuse "is not intended to give litigants a veto power over sitting judges" or serve as "a vehicle for obtaining a judge of their choice." United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993).

In support of his *Motion to Reconsider*, Mazzei relies upon Canon 3(A)(6) of the Code of Conduct for United States Judges (the "Code of Conduct") which contains an admonition against public comments by judges on pending matters. Through the letter, Mazzei argues that Judge Agresti made a "public comment about a pending proceeding" by suggesting that Mazzei abused the Court's loss mitigation program. Mazzei complains that these and other "disparaging remarks" contained in the letter were off-the-record comments not rendered in the course of a judicial proceeding, thereby denying him a suitable opportunity to respond.[11]

The letter cannot substantiate a claim of actual bias against the judges who merely reviewed its contents. Determining whether a "perception of bias" exists among the recipients is

---

[11] The Court cannot ignore the timing of Mazzei's most recent allegations. Mazzei was in possession of the letter for at least six months before he considered challenging it. He neglected to reference the letter in both the *Motion to Vacate* and the *Motion to Recuse*. It was only after Chief Judge Deller denied his request to dismiss the disciplinary proceeding that Mazzei first raised an issue with the letter. Even still, Mazzei does not object to the substance of the letter which seeks to prevent him from receiving payments for legal fees in those cases where fees were denied.

11

a different matter, and one that is difficult to assess. The Court will therefore evaluate the letter from the perspective of its author. Should the letter display an appearance of bias by Judge Agresti against Mazzei, then further inquiry is necessary on the impact this may have on the recipient-judges. If, however, the letter does not require Judge Agresti's recusal, then the other judges of this Court are similarly not disqualified for simply receiving it.

As an initial matter, it is not clear that the letter constitutes a public comment. The Code of Conduct does not define "public comment" and the cases that interpret Canon 3 offer little clarification. From its review of the relevant case law, the Court finds that a consistent theme emerges. In each instance, public comments are extrajudicial statements made with an expectation that they will be disseminated to the public at large and which reasonably undermine the judge's appearance of impartiality as to a pending or impending proceeding. See Ligon v. City of New York, 736 F.3d 118, 127 (2d Cir. 2013) (judge described herself as "skeptical of law enforcement" in media interviews given while a civil rights case involving stop-and-frisk police tactics was pending); United States v. Microsoft Corp., 253 F.3d 34, 109-112 (D.C. Cir. 2001) (judge divulged his views on essential factual and legal issues in a pending case to reporters in private interviews, but with the knowledge that his comments would ultimately receive widespread dissemination); In re Boston's Children First, 244 F.3d 164, 167-168 (1st Cir. 2001) (judge made comments to a local newspaper comparing the complexity of her present case to a previous one); Cooley, 1 F.3d at 995-996 (10th Cir. 1993) (appearing on national television, judge discussed certain abortion protests occurring in apparent violation of his orders); United States v. Haldeman, 559 F.2d 31, 134-135 (D.C. Cir. 1976) (judge conducted interviews with reporters in which he made statements concerning pending case).

Viewed within this context, the letter does not exhibit any of the hallmarks of a "public comment." It was not disseminated to the media and there was no reasonable expectation that it would be released to the public at large. The recipients were limited to individuals who had reason to receive the information by virtue of their role in the administration of the affected chapter 13 cases, and none of them had an incentive to distribute it to third parties. Indeed, it was not until Mazzei attached the letter as an exhibit to the *Motion to Reconsider*, thereby making it part of the record, that it became accessible to individuals outside of the intended recipients.

Even if the letter is considered a public comment, it was not an impermissible public comment. The Code of Conduct authorizes public statements by judicial officers in certain circumstances. Canon 3(A)(6) specifically provides that the prohibition on public comment "does not extend to public statements made in the course of the judge's official duties, to explanations of court procedures, or to scholarly presentations made for purposes of legal education." Code of Conduct Canon 3(A)(6). Mazzei's abridged citation to Canon 3(A)(6) ignores this rather significant exception.

The Court finds that the letter was issued by Judge Agresti within the scope of his official duties as the supervising judge for the Court's loss mitigation program.[12] While serving in this capacity, Judge Agresti had the opportunity to observe Mazzei's conduct within the program. Eventually, Judge Agresti became concerned with the diligence by which Mazzei was handling his cases and the candor with which he was reporting their progress to the Court. See In re Brigger, Case No. 12-11352-TPA, at Doc. No. 57; see also In re Dietrich, Case No. 11-

---

[12] For most of 2013, Judge Agresti conducted hearings on all loss mitigation cases pending throughout this District, regardless of whether the underlying bankruptcy case was assigned to another judge. This was the result of a decision made by the judges of this Court to assign loss mitigation hearings to a single judge for the purpose of promoting consistency and uniformity in the fledgling program.

23556-CMB, at Doc. No. 124. After issuing multiple orders to show cause, Judge Agresti held a series of hearings to determine whether Mazzei acted inappropriately and should be sanctioned for his conduct. As a result of these hearings, Judge Agresti denied Mazzei's legal fees in a number of cases.

The letter provides the chapter 13 trustee with a compilation of 256 cases in which Mazzei's fees were denied.[13] Its purpose was three-fold. It requires the trustee to monitor the affected cases to ensure that "denied" fees were not inadvertently paid. It imposes a duty on Mazzei to "self-report" any unauthorized payments he receives. Lastly, the letter updates the other judges on developments which occurred in their cases. As each of these items ensures compliance with the Court's Orders, the letter falls within the scope of Judge Agresti's official duties.

Mazzei claims the use of the word "abuse" is a sign of bias. After examining the context in which the word is used, the Court concludes otherwise. The term appears just two times in the letter, and each time, it is associated with the denial of legal fees.[14] Under normal circumstances, Mazzei is entitled to collect a "no-look" fee of $1,000 for each loss mitigation case he pursues. See W.PA.LBR 2016-1(f). Because Court approval is not required, no inquiry is made into the reasonableness of the fees. Mazzei can receive payment without justifying the time spent or the expenses incurred. Given this standard, it is an extraordinary occurrence when an attorney is denied the right to collect the "no-look" fee. It is even more damning when the fee

---

[13] Although the chapter 13 trustee received copies of each order denying Mazzei's fees, this letter consolidated the information into one document.

[14] The first paragraph states: "Attached is a list of cases in which I previously denied fees to Mazzei & Associates since becoming aware of Atty. Mazzei's abuse of the Loss Mitigation Program." The third paragraph provides: "Hopefully the screening process will be able to identify those cases [where Judge Taddonio or Chief Judge Deller denied fees] and Mazzei will not further abuse his stewardship of those particular cases by seeking fees even though denied and not identified on the attached list."

is denied in 256 cases.[15] Because the Court must find "cause" to deny the no-look fees, it is not unreasonable to conclude that an "abuse" occurred when these otherwise presumptive fees are denied. To the extent any part of the letter reflects badly upon Mazzei, it is the portion which references the denied fees. Since this is a matter of record, the statements are not improper or unfairly prejudicial. See United States v. Yonkers Bd. of Educ., 946 F.2d 180, 184-185 (2d Cir. 1991) (comments which mirror those in the record are not improper).

Based upon the foregoing, a reasonable person would not deem the letter to display an appearance of bias, prejudice, or impropriety on the part of Judge Agresti. It was written to further compliance with his Orders, a task which squarely falls within the Court's core functions. Having determined that 28 U.S.C. § 455 does not require Judge Agresti's disqualification as the author of the letter, it follows that recusal is similarly unnecessary for the members of this Court who simply received the letter.

B.

The Court now considers whether its prior comments to Mazzei serve as an independent basis for disqualification. Mazzei does not allege any actual bias or prejudice by the Court.[16] Instead, he claims that remarks made by the undersigned would cause a reasonable person to question the impartiality of this Court.

---

[15]  Mazzei failed to appeal these determinations in all but three cases (In re Brown, Case No. 08-10419-TPA; In re Wolfe, Case No. 11-11622-TPA; and In re Kessler, Case No. 12-10145-TPA). Mazzei voluntarily withdrew these appeals approximately 30 days after they were commenced as part of his acceptance of the Consent Order entered into in the Dietrich case (Case No. 11-23556-CMB, Doc. No. 131).

[16]  At the June 27 hearing, Mazzei confirmed his belief that this Court did not harbor any prejudice against him:

> Mazzei: I don't believe you have a bias. I believe you are – my experience with you, Your Honor, is that you've been fair and neutral and I have nothing but praise for Your Honor.

See Hearing Held in Courtroom A, June 27, 2014 (1:43 p.m.).

Mazzei alleges that in his "very first hearing" in front of the undersigned, the Court cautioned that loss mitigation does not exist for the purpose of generating fees. [Doc. No. 46 at ¶15].[17] He claims this echoes comments previously made to him by Judge Agresti and infers bias arising from an extrajudicial source. Mazzei also suggests the Court made similar comments to an "associate attorney" on other unidentified occasions.

Aside from these naked assertions, Mazzei fails to offer a stitch of support. When pressed for specifics at the June 27 hearing, Mazzei could not identify the cases or the context in which the alleged comments were made, and no transcripts were offered. It is not the Court's responsibility to review countless hours of hearings ranging over a span of several months to determine the instances to which Mazzei is referring – if they exist. See In re Grigg, 2013 WL 5945793, *5 (Bankr. W.D. Pa. Nov. 6, 2013) ("Just as it is not the court's role to make a party's argument, it is not the role of the court to hunt through the record."); Harmony Holdings, LLC, 393 B.R. 409, 416 (Bankr. D.S.C. 2008) ("[i]t is not the Court's function to endlessly explore the record for facts that support the case of either party."). As the moving party, Mazzei must sustain his burden of proof and the generalized allegations offered to the Court do not suffice.

The Court believes the case to which Mazzei refers is the matter of In re Cordes, Case No. 12-23729-GLT, but the comments made were not as Mazzei describes. On September 20, 2014, the Court held a hearing regarding an order to show cause (the "OTSC") issued by Judge Agresti against Mazzei.[18] As explained *supra*, a finding of prejudice must stem from an extrajudicial source. See Liteky, 510 U.S. at 554 (1994). The issues raised by the undersigned

---

[17] The individual paragraphs in the *Motion to Reconsider* were not accurately numbered. As a result, the *Motion to Reconsider* contains two paragraphs identified as "15."

[18] This marks the first date the undersigned conducted loss mitigation hearings after taking over responsibilities as the "loss mitigation judge" from Judge Agresti.

arose straight from the face of the OTSC. It required Mazzei to personally appear and explain why he should not be sanctioned for failing to confirm his clients' eligibility for loss mitigation before enrolling them in the program. During the course of that hearing, the Court's comments reflected the scope of the OTSC as it stressed the importance of pre-case evaluation. It reminded Mazzei that all judges within the Court expected candidates to be screened prior to filing a request for loss mitigation.

While the undersigned did not have personal experience with Mazzei prior to the hearing, such experience was unnecessary. The Court gained all the information it needed by reviewing the case docket. Because these insights were obtained through the record of the case before it, the Court was entitled to draw conclusions about Mazzei's performance.[19]

The Supreme Court has stated that opinions formed by the judge on the basis of facts introduced or events occurring during current proceedings or prior proceedings are not grounds for recusal unless they display a deep-seated favoritism or antagonism that would make a fair judgment impossible. Id. at 555. Mazzei failed to show how comments made to him by the undersigned are different from those expressed to any other counsel facing a similar fact pattern. In no way do the remarks of this Court in September 2013 suggest a deep-seated favoritism or antagonism such that they are exempt from the extrajudicial source requirement. In fact, it is well-established that judicial remarks made during the course of a trial that are critical or disapproving of – or even hostile to – counsel, the parties, or their cases, ordinarily do not support a bias or impartiality challenge. Id.

The Court is mindful that its recusal obligations are a two-way street. While a judge must recuse himself when the circumstances justify it, he is equally bound to retain a case

---

[19] The record from the September 20 hearing is devoid of any statements by the Court regarding the use of loss mitigation for "fee-generation." Mazzei suggested this was a comment made by the undersigned, but the Court found no evidence of it during its review of the hearing.

when no basis for recusal exists. See United States v. Bray, 546 F.2d 851, 857 (10th Cir. 1976). "It is vital to the integrity of the system of justice that a judge not recuse himself on unsupported, irrational or highly tenuous speculation." McCann v. Commc'n Design Corp., 775 F. Supp. 1506, 1523 (D. Conn. 1991). In fact, a judge has the affirmative duty *not* to recuse himself if the party moving for recusal fails to establish a reasonable doubt concerning his impartiality or bias. Grand Entm't Group, Ltd. v. Arazy, 676 F. Supp. 616, 619 (E.D. Pa. 1987). The Court fails to see how information gleaned from these public proceedings somehow affects the perceived impartiality of this Court or would cause a reasonable person to question its impartiality. After considering the allegations set forth in the *Motion to Reconsider*, the Court finds no basis to recuse itself from these proceedings.

IV.

In sum, the *Motion to Reconsider* is devoid of any basis that would support reconsideration of the Court's June 10 Order under either Federal Rule of Civil Procedure 59(e) or 60(b). Instead, the *Motion to Reconsider* merely rehashes arguments previously made by Mazzei and attempts to introduce new "evidence" that could have been presented multiple times prior to the *Motion to Reconsider*. The *Motion to Reconsider* also fails to support a showing of bias, prejudice, or a lack of impartiality sufficient to support a disqualification of either the undersigned or other judges of this District. For these reasons, the Court will issue an Order denying the *Motion to Reconsider*.

Dated: September 4, 2014

_____
GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY COURT